IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE NOLDEN, an individual, | ) | |
| Plaintiff, | ) | Case No.: 08 C 4355 |
| v. | ) | Judge Hart |
| GREYHOUND LINES, INC. | ) | Magistrate Brown |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT PURSUANT TO FRCP RULE 12(b)(1) & (6)**

The Defendant, by their attorneys, Peter H. Carlson and Linda K. Horras of Hinshaw & Culbertson, states the following as its Motion to Dismiss Plaintiff's Complaint brought pursuant to FRCP 12(b)(1) and 12(b)(6):

## I. STATEMENT OF FACTS

Plaintiff is a resident of Chicago, Illinois, who purportedly used Greyhound's bus service to move from Alabama to Chicago. (Cp., ¶¶1, 3-4. Plaintiff's complaint is attached as Exhibit A). Specifically, the Plaintiff claims that he made a reservation for a Greyhound bus trip for June 8, 2006; that he informed Greyhound staff of his physical needs as he was disabled and confined to a wheelchair; and that he requested that Greyhound provide him a lift-equipped bus or other boarding assistance. However, Plaintiff asserts that on June 8, 2008, Greyhound did not provide a lift-equipped bus or any other boarding assistance; rather he had to board the bus on his own. (Cp., ¶¶4-9). Greyhound's alleged failure to accommodate his handicap form the bases of the Plaintiff's four-count complaint. Those counts are negligence, breach of contract, intentional infliction of emotional distress and negligent infliction of emotional distress.

This court lacks subject matter jurisdiction to entertain any of the Plaintiff's claims as they are preempted by the Illinois Human Rights Act ("IHRA"). For this reason, the Court must dismiss the Plaintiff's complaint for lack of jurisdiction under FRCP 12(b)(1).

## II. **ARGUMENT**

IHRA Preempts Plaintiff's Common Law Claims.

The Illinois Human Rights Act "secures for all individuals in Illinois the freedom from discrimination against any individual because of his or her ... physical or mental handicap ... in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations.." (775 ILCS 5/1-102(A). Article 5 of the IHRA addresses discrimination in public accommodations and provides that "it is a civil rights violation for any person on the basis of unlawful discrimination to ... deny or refuse to another the full and equal enjoyment of the facilities and services of any public place of accommodation." (775 ILCS 5/5-102(A). If an individual believes he has been denied the full and equal enjoyment of public facilities as provided in Article 5, he has redress in the Illinois Department of Human Rights and must begin this process by filing a charge of discrimination with the Department within 180 days after the alleged civil rights violation. (775 ILCS 5/7A-101 & 102(A).[1] Greyhound's bus lines are places of public accommodations under the statute. *See* 775 ILCS 5/5-101(B).

Claims which do not follow the IHRA's procedural rules cannot proceed. For instance ,in *Clabault v. Shodeen Management,* 2006 WL 1371460 (N.D. Ill. May 15, 2006), Plaintiff challenged the defendant property management company's rent collection and eviction procedures and also asserted that it discriminated against her on the basis of a mental disability.

1 The IHRA was recently amended, allowing civil rights violations also to be heard in court but the same procedures in § 7A-102 apply. *See* 775 ILCS 5/8-111(A).

She brought suit and invoked, in part, the Fair Debt collection Practices Act, the Fair Housing Act and the Illinois Human Rights Act. 2006 WL 1371460 at *1, 3. The Court held that it did not have jurisdiction to consider claims under the IHRA, holding that "the IHRA scheme is the exclusive source of redress for plaintiff's allegations." *Id.* at 3. (See also *Williams v. Naylor*, 147 Ill. App. 3d 258, 497 N.E. 2d 1274, 1276 (1st Dist. 1986)(circuit court dismissed Plaintiff's housing discrimination due to the exclusivity provisions of the IHRA)).

The case of *Demar v. Chicago White Sox*, 2006 WL 200640 (N.D. Ill. Jan. 18, 2006) is even more on point. There, Plaintiff attended a White Sox game and, after the game, he idled in his seat to let the crowds thin out before he exited. Plaintiff, who had had polio and paralysis due to that polio, was substantially limited in his ability to walk and he felt that letting the throng of fans leave first would aid him as he tried to make his way to the restrooms and then out of the stadium. *Id.* at 1. Unfortunately for the Plaintiff, the security personnel from the Defendant SDI Security, Inc., required the Plaintiff to leave his seat immediately. When the Plaintiff explained his situation, the security personnel allegedly forcibly removed him from his seat, took him to ground level and to a waiting ambulance, who then took him to the hospital. *Id.* Plaintiff did not require medical attention and then had to find his way back to the stadium in order to collect his vehicle. *Id.*

Demar brought suit in federal court against the White Sox organization, SDI Security and the ambulance service under the Americans with Disabilities Act and common law claims of assault and battery, false imprisonment, negligence, negligent infliction of emotional distress and a respondeat superior claim. The defendants filed various motions, including a motion to dismiss under FRCP 12(b)(6). Part of its basis for dismissal was that several of the common law claims were preempted by the IHRA. 2006 WL 200640 at *2.

The district court considered the Illinois human rights statute and its exclusivity provisions, noting that the Act "provides that 'except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 2006 WL 200640 at *2 *citing* 775 ILCS 5/8-111(C). This exclusivity provision effectively prohibits common law claims that are "inextricably linked to a civil rights violation under the IHRA." 2006 WL 200640 at *2 (cite omitted). However, the court held that Plaintiff's claims that were not based on the civil rights deprivation—the failure to accommodation—were not so preempted. For example, the battery claim did not involve questions about whether the defendants should have accommodated the Plaintiff's disability and thus survived the motion to dismiss. *Id.* Likewise, to the extent the other common law claims rested on the removal of the Plaintiff from the park and trip to the hospital, as opposed to the accommodation claims, they, too, were not preempted. *Id.*

However, Demar's claims of negligence and negligent infliction of emotional distress that were based on the defendants' actions of removing him from the seating area instead of granting his request to remain there until the crowds dispersed were preempted by the IHRA. 2006 WL 200640 at *2. Those claims clearly rested on the Plaintiff's theory that he, as a disabled person, was entitled to this as an accommodation.

In the present case, Mr. Nolden has raised four different theories of common law liability against Greyhound for its alleged refusal to accommodate his disability. As seen in his complaint, he asserts that Greyhound refused to provide him a bus with a lift-gate, which is the specific accommodation he had sought as he was confined to a wheelchair, and then, when the bus he was to ride on was not so equipped, Greyhound personnel denied him other accommodations, such as assistance in boarding. (See Cp., ¶¶9, 12). According to Plaintiff,

Greyhound's lack of accommodation was negligent, breached a contract with him, and intentionally or negligently inflicted emotional distress upon him.

Each of the Plaintiff's claims rests squarely on the principle that Greyhound had denied him the full and equal enjoyment of its public buses when it failed to accommodate his disability. While Greyhound empathizes with Plaintiff, his claims should have been brought to the Illinois Department of Human Rights under Article 5 of the IHRA, not as common law tort or contract claims. For these reasons, this court does not have jurisdiction to consider these claims and it should be dismissed under R. 12(b)(1)[2].

## III. CONCLUSION

For all of the above reasons, Greyhound Lines, Inc. is entitled to a dismissal of Plaintiff's Complaint.

Respectfully submitted,

GREYHOUND LINES, INC.

/s/Linda K. Horras

Linda K. Horras
One of the Attorneys for Defendant
Greyhound Lines, Inc.

Peter H. Carlson #06206698
Linda K. Horras #06200203
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704-3022

---

[2] Some courts have dismissed under FRCP 12(b)(6) for failure to state a cause of action under the preemption doctrine. *See Demar, supra; Diemer v. Fraternal Order of Police*, 2006 WL 862866 at *1 (N.D. Ill. Mar. 28, 2006).

**STATE OF ILLINOIS )**
**)**
**COUNTY OF COOK )**

**CERTIFICATE OF ECF SERVICE**

I, the undersigned, state that I filed the above and foregoing Greyhound Line's Motion to Dismiss Plaintiff's Complaint via the United States District Court for the Northern District of Illinois' Electronic Case Filing system (ECF) on the 5th day of August, 2008.

*/s/Linda K. Horras*
Linda K. Horras

**CERTIFICATE OF REGULAR SERVICE BY MAIL**

The undersigned further states that she served the above and foregoing Motion to Dismiss by mailing a copy to:

John E. Partelow, Esq.
555 West Jackson Boulevard
Suite 700
Chicago, IL 60661

on the 5th day of August, 2008, with proper postage prepaid.

Linda K. Horras



6346355v1 8960
6005042v1 999999

# EXHIBIT A TO MOTION TO DISMISS

# PLAINTIFF'S COMPLAINT

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| WILLIE NOLDEN, Plaintiff, | ) | 2008L006300 CALENDAR/ROOM A TIME 00:00 PI Other |
| vs. | ) | Case No. |
| GREYHOUND LINES, INC., Defendant. | ) | Plaintiff Demands Trial By Jury |

2008 JUN 9 PM 3:54
CLERK OF THE CIRCUIT COURT LAW DIVISION

COMPLAINT

Now comes plaintiff, WILLIE NOLDEN, by and through his attorney, John E. Partelow, and complaining of defendant, GREYHOUND LINES, INC., states as follows:

COUNT I

(Negligence)

1. Plaintiff, WILLIE NOLDEN, is an individual resident of the City of Chicago, County of Cook, State of Illinois. At all times relevant hereto, defendant was disabled and confined to a wheelchair.

2. Defendant, GREYHOUND LINES, INC. ("Greyhound"), is a foreign corporation, headquartered in Dallas, Texas, which is authorized to do business in the State of Illinois. Greyhound operates a nationwide intracity passenger bus service and has several places of business in the Chicago area, including a main bus terminal in downtown Chicago.

3. In June of 2006 plaintiff was a resident of the State of Alabama and had made preparations to move his place of residence to the Chicago area. In connection with the planned move to Chicago, plaintiff relinquished his residence in Alabama and took other steps to sever his ties to Alabama.

08083898

4. On or about June 1, 2006, plaintiff Nolden purchased a ticket from defendant Greyhound for travel on one of its regularly scheduled bus routes from Huntsville, Alabama to Chicago, Illinois, with intermediate stops in Athens, Alabama, Nashville, Tennessee, Louisville, Kentucky and Indianapolis, Indiana. Plaintiff Nolden made the reservation by telephone for travel on June 8, 2006. The ticket purchased by plaintiff was paid for and picked up the next day, on June 2, 2006.

5. At the time the reservation was made, plaintiff advised defendant Greyhound, through its ticket sales representative, that he was disabled and confined to a wheelchair and requested assistance at the time of boarding. Plaintiff informed the Greyhound personnel of all requested details of his physical condition. Greyhound, through its ticket sales representative, advised plaintiff of its Disabled Travelers Policy and accepted plaintiff's reservation. Greyhound, through its ticket sales representative, assured plaintiff that it would provide a lift equipped bus, or other boarding assistance, at the time of departure, if plaintiff contacted the "Greyhound Customers with Disabilities Travel Assistance Line" at least 48 hours prior to his departure. Based on those representations plaintiff Nolden made a reservation with Greyhound for a June 8, 2006 departure, purchased the ticket and completed his preparations to move his residence from Alabama to Chicago, Illinois.

6. In accordance with Greyhound policy, plaintiff Nolden contacted the Greyhound Customers with Disabilities Travel Assistance Line at least 48 hours prior to his departure to request

a lift equipped bus, or other boarding assistance, at the time of his departure from the Huntsville station on June 8, 2206 at approximately 6:55 p.m. Plaintiff Nolden was assured, by the Greyhound representative on the Greyhound Customers with Disabilities Travel Assistance Line, that a lift equipped bus, or other boarding assistance, would be made available by Greyhound at the time and place of his departure.

7. On June 8, 2006, plaintiff Nolden arrived at the Greyhound terminal in Huntsville, Alabama more than an hour prior to the scheduled departure of 6:55 p.m. Plaintiff advised the Greyhound representatives at the terminal of the details of his scheduled departure and his previous request for a lift equipped bus, or other boarding assistance. At that time, plaintiff had all of his possessions with him, packed into three suitcases, which were to be shipped with him on the bus to Chicago.

8. Prior to his scheduled departure, plaintiff had done all things necessary and required of him by Greyhound's policy to secure a lift equipped bus, or other boarding assistance for his trip to Chicago on Greyhound.

9. When the Greyhound bus arrived for the scheduled departure, it was not equipped with a lift or any other appropriate equipment to assist plaintiff in boarding the bus. The driver, and other Greyhound personnel present at the scene, refused to provide plaintiff with any assistance of any kind in boarding the bus.

10. Initially, Greyhound personnel advised plaintiff that a lift equipped bus had been present on June 7, 2006 and plaintiff had simply failed to appear on the correct day. However, when

plaintiff presented his ticket indicating a June 8, 2006 departure, Greyhound personnel advised plaintiff that if he did not board the bus it would leave without him. Greyhound personnel, including the driver, refused to offer any boarding assistance to plaintiff or any alternative arrangements for his travel to Chicago.

11. Plaintiff Nolden advised Greyhound personnel that he had relinquished his residence in Alabama in preparation for his move to Chicago and, consequently, had no place to stay in Alabama. Greyhound personnel reiterated to plaintiff that if he did not board the bus prior to its departure, it would leave without him.

12. Defendant Greyhound, through its on site representatives, failed to provide a lift equipped bus, or any other boarding assistance, to plaintiff on June 8, 2006. By reason of that failure, plaintiff was forced to crawl from his wheelchair and pull himself up the stairs of the bus without any assistance from any of the Greyhound employees, including the driver, present at the time. No one from defendant Greyhound offered any assistance to plaintiff in boarding the bus.

13. As a direct and proximate cause of being forced to drag himself up the stairs of the bus, plaintiff suffered injuries to his body, and mental and emotional distress and humiliation. Defendant Greyhound, through its employees present at the time, made no offer of assistance to plaintiff for his injuries, once he had boarded the bus.

14. As a direct and proximate cause of being forced to drag himself up the stairs of the bus, plaintiff lost control of certain of his bodily functions and soiled himself. By reason of

defendant's failure, through its employees present at the time, plaintiff remained in that condition, injured and soiled, for the more than thirteen hours it took to reach Chicago.

15. Defendant Greyhound then owed a duty to plaintiff to exercise reasonable care in providing boarding assistance to its disabled passengers, including plaintiff. Defendant Greyhound, through its employees present at the time, carelessly and negligently breached that duty to plaintiff.

16. Defendant Greyhound's negligent breach of its duty to plaintiff directly and proximately caused plaintiff's injuries.

17. The aforementioned conduct of defendant Greyhound's employees was so extreme and outrageous that plaintiff should be awarded punitive damages in addition to any and all compensatory damages.

WHEREFORE, Plaintiff, WILLIE NOLDEN, prays for judgment against the defendant, GREYHOUND LINES, INC., in an amount in excess of $50,000.00 in compensatory damages, plus punitive damages, attorneys fees and costs of suit.

COUNT II

**(Breach of Contract)**

1-17. Plaintiff repeats and realleges paragraphs 1 through 17 of Count I as paragraphs 1 through 17 of this Count II.

18. The purchase of the ticket by plaintiff from defendant Greyhound, coupled with defendant Greyhound's policy regarding boarding assistance for disabled passengers constituted a contract between plaintiff and defendant Greyhound.

19. At no time did plaintiff breach that contract and plaintiff did perform all actions required of him under the contract.

20. Defendant Greyhound materially breached the contract with plaintiff.

21. By reason of defendant's breach, plaintiff is entitled to damages.

WHEREFORE, Plaintiff, WILLIE NOLDEN, prays for judgment against the defendant, GREYHOUND LINES, INC., in an amount in excess of $50,000.00 in compensatory damages, plus, attorneys fees and costs of suit.

**COUNT III**

**(Intentional Infliction of Emotional Distress)**

1-17. Plaintiff repeats and realleges paragraphs 1 through 17 of Count I as paragraphs 1 through 17 of this Count III.

18. Defendant Greyhound's conduct, through its failure to offer any boarding assistance to a wheelchair bound passenger, forcing him to drag himself from his wheelchair and up the stairs of the bus, injuring himself in the process is extreme and outrageous to any reasonable person.

19. The aforementioned conduct of defendant Greyhound's employees was undertaken with the intent of causing plaintiff severe emotional distress.

20. The aforementioned conduct of defendant Greyhound's employees did in fact cause plaintiff severe emotional distress.

21. The aforementioned conduct of defendant Greyhound's employees was so extreme and outrageous that plaintiff should be

awarded punitive damages in addition to any and all compensatory damages.

WHEREFORE, Plaintiff, WILLIE NOLDEN, prays for judgment against the defendant, GREYHOUND LINES, INC., in an amount in excess of $50,000.00 in compensatory damages, plus punitive damages, attorneys fees and costs of suit.

**COUNT IV**

**(Negligent Infliction of Emotional Distress)**

1-17. Plaintiff repeats and realleges paragraphs 1 through 17 of Count I as paragraphs 1 through 17 of this Count III.

18. Defendant Greyhound's conduct, through its failure to offer any boarding assistance to a wheelchair bound passenger, forcing him to drag himself from his wheelchair and up the stairs of the bus, injuring himself in the process is extreme and outrageous to any reasonable person.

19. The aforementioned conduct of defendant Greyhound's employees was undertaken with the intent of causing plaintiff severe emotional distress.

20. The aforementioned conduct of defendant Greyhound's employees did in fact cause plaintiff severe emotional distress.

21. Defendant Greyhound owed a duty to plaintiff to exercise reasonable care and provide adequate assistance to plaintiff in boarding its bus.

22. Defendant Greyhound, through its employees present at the scene, breached that duty, which breach proximately caused the plaintiff to suffer severe emotional distress.

WHEREFORE, Plaintiff, WILLIE NOLDEN, prays for judgment against the Defendant, GREYHOUND LINES, INC., in an amount in excess of $50,000.00, plus costs.

WILLIE NOLDEN

By: ______________________
His Attorney

John E. Partelow, Esq.
Attorney for Plaintiff
555 West Jackson Boulevard
Suite 700
Chicago, Illinois 60661
(312) 655-0837
Attorney No. 28882